IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINA THOMAS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **FAIRMOUNT BEHAVIORAL** | : | |
| **HEALTH SYSTEM,** | : | |
| Defendant | : | **NO. 06-523** |

MEMORANDUM

PRATTER, J.                                                                                                                      AUGUST 8, 2007

      Regina Thomas filed suit against her former employer, Fairmount Behavioral Health System a/k/a UHS of Fairmount, Inc. ("Fairmount"), pursuant to 42 U.S.C. § 2000(e) ("Title VII") and 42 U.S.C. § 1981 ("§ 1981") for damages arising out of her allegedly discriminatory discharge.  Fairmount moves for summary judgment, contending that the record lacks any evidence that Fairmount unlawfully discriminated against Ms. Thomas or that Fairmount's legitimate, nondiscriminatory reason for Ms. Thomas's discharge is pretextual.  Ms. Thomas opposes the Motion.  For the following reasons, the Court will grant summary judgment on all claims in favor of Fairmount.

**FACTUAL BACKGROUND**

      Ms. Thomas is an African-American female and former employee of Fairmount, a psychiatric hospital that provides behavioral health and chemical dependency treatment.  (Def. Mot. Ex. I.)  Kim Hofmann, a Caucasian female and Fairmount's Director of Nursing, hired Ms. Thomas as a psychiatric technician ("psych tech") in November 2001 and discharged her in March 2004.  (Def. Mot. Ex. B, Thomas Dep. 9:9; Def. Mot. Ex. G.)  As a psych tech, Ms.

Thomas's primary responsibilities included monitoring patients, documenting patient behavior at regular intervals and assisting the charge nurse.  (Def. Ex. B, Thomas Dep. 15:1-7.)

Ms. Thomas worked without any significant performance problems throughout most of her tenure at Fairmount, and she does not allege any discriminatory treatment during her application process or prior to her discharge.  (Id. at 30:8-12.)  Fairmount did formally discipline Ms. Thomas twice during the four months preceding her discharge.  (See Def. Mot. Exs. D and E.)

First, Fairmount issued a "final written warning" to Ms. Thomas in December 2003 after she allegedly encouraged the use of physical force between two minor patients.  (Def. Mot. Ex. D.)  Both patients and an unidentified Fairmount staff member reported the details of this incident (id.), but Ms. Thomas maintains that she merely sat with one of the patients after he had gotten into a fight with his roommate, informed him that he would have to "deal with it" because he could not be transferred, and sent him back to his room (Def. Mot. Ex. B, Thomas Dep. 17:17-25).  This conduct prompted Fairmount to permanently remove Ms. Thomas from the Child and Adolescent Services work schedule.  (Def. Mot. Ex. I.)

Second, Fairmount ordered "preventative counseling" for Ms. Thomas in January 2004 after she "called out" from work twice in a two-week period.  (Def. Mot. Ex. E.)  Calling out, as referred to here, is the practice of telephoning Fairmount immediately prior to a psych tech's scheduled shift to report an absence from that shift.  (Def. Mot. Ex. B, Thomas Dep. 21:16-18, 22:24-25.)  Ms. Thomas testified that she called out on December 11, 2003 in order to take her daughter to the hospital, and on December 26, 2003 because she wanted a four-day vacation. (Def. Mot. Ex. B, Thomas Dep. 22:5-22.)

While Ms. Thomas's two infractions described above influenced Fairmount's decision to terminate her employment, Fairmount nonetheless maintains that it discharged Ms. Thomas primarily because she violated hospital regulations by not monitoring 10 patients, 8 of whom were classified as "actively suicidal," for nearly two hours during her 11 p.m. to 7 a.m. shift on March 22-23, 2004. (Def. Mot. Exs. I and G.) Pursuant to Fairmount's protocol, psych techs such as Ms. Thomas must record the behavior of their assigned patients on two forms, Q-15s (or precautions records) and rounds sheets, at 15- and 30-minute intervals, respectively. (Statement of Undisputed Facts ¶ 22; Def. Mot. Ex. G.) These forms serve the dual purpose of documenting compliance with physician orders and ensuring that patients receive continuous around-the-clock medical attention. (Id.)

Shortly after the completion of the March 22-23 shift, Ms. Hofmann learned that the Q-15s for 10 patients had not been completed between 5:00 a.m. and 7:00 a.m. Ms. Hofmann, however, was unable to determine which of the three psych techs on duty – Carlaina Claitt, Yusef Gilmore Bey, or Ms. Thomas[1] – was responsible for those patients during that time period. (Statement of Undisputed Facts ¶ 23; see also Def. Mot. Ex. L.) To resolve the matter, Ms. Hofmann interviewed the shift's charge nurse, Jennifer Roth, and the three psych techs themselves. (Statement of Undisputed Facts ¶ 23.) According to Ms. Roth's "best recollection," to determine which psych tech was assigned to the unmonitored patients, she and Ms. Hofmann referenced the shift assignment sheet, a document posted by the charge nurse at the beginning of most shifts detailing the psych techs' patient care responsibilities. (Def. Mot. Ex. F, Jennifer Roth Dep. 90:24-91:5, 92:2-12.) However, neither party has been able to locate the March 22-23

---

[1] Ms. Claitt is an African-American female and Mr. Bey is an African-American male.

assignment sheet, and Ms. Thomas disputes that Ms. Roth ever posted one for the shift in question.[2]

After Ms. Hofmann interviewed Ms. Roth and the psych techs, Ms. Hofmann discovered that Ms. Thomas had signed the March 22-23 *rounds sheet* for the unmonitored patients between 5:00 a.m. and 7:00 a.m., the same two-hour period during which the *Q-15s* for these patients were incomplete. (See Def. Mot. Ex. K.) Based upon this finding and the interviews she conducted, Ms. Hofmann concluded that Ms. Thomas was the psych tech assigned to the unmonitored patients. Fairmount subsequently discharged Ms. Thomas, a result Fairmount attributes to Ms. Thomas's role in the March 22-23 incident, as well as her prior disciplinary problems and poor performance evaluation in December 2003. (See Def. Mot. Exs. G and I.)

Ms. Thomas, contending that she was not responsible for the unmonitored patients, timely filed an administrative charge of discrimination. Fairmount automatically investigates any claim of discrimination, and its Human Resources Director, Theresa Mahoney, was appointed to review the incident. (Def. Mot. Ex. C, Theresa Mahoney Dep. 43:11-16, 44:19-45:1.) Ms. Mahoney, an African-American woman, interviewed Mr. Bey, Ms. Roth and Ms. Hofmann, and also reviewed the March 22-23 rounds sheet, which Ms. Thomas had signed between 5:00 a.m. and 7:00 a.m. (Id. at 50:23-51:12.) After doing so, Ms. Mahoney confirmed that Ms. Hofmann had an "accurate" basis for discharging Ms. Thomas. (Id. at 53:25-54:2.) Ms. Mahoney later testified that Fairmount complies with equal opportunity employment requirements. She also confirmed that 88% of Fairmount's psych techs are African-American.

---

[2] Occasionally, the charge nurse at Fairmount verbally informs the on-duty psych techs of their patient assignments instead of posting a written assignment sheet. (Def. Mot. Ex. H, Carlaina Claitt Dep. 18:13-16.)

**JURISDICTION**

The Court has jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1343.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the

motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**DISCUSSION**

Ms. Thomas maintains that she was not responsible for observation of the 10 unmonitored patients and alleges that Fairmount unlawfully terminated her employment based on her race and/or gender. Because Ms. Thomas cannot show that Fairmount's legitimate, nondiscriminatory reason for her discharge is pretextual, the Court will grant summary judgment in favor of Fairmount.

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . or . . . sex . . . " 42 U.S.C. § 2000e-2(a)(1). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "the Supreme Court created a special scheme for structuring the presentation of evidence in discriminatory treatment cases under [Title VII]." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); see also McDonnell Douglas, 411 U.S. at 802-805. Under this burden-shifting framework, the plaintiff carries "the initial burden . . . of establishing a prima facie case of [unlawful] discrimination." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 802). "If the plaintiff succeeds, the burden of production shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [adverse employment action].'" Id. (emphasis omitted). Should the defendant meet its burden, the plaintiff then must show by a preponderance of the evidence that the defendant's stated reason is pretext. Fuentes, 32 F.3d at 763. Despite the shifting intermediate evidentiary burdens, the plaintiff at all times carries the burden of persuading the factfinder that the defendant unlawfully discriminated against him or her. Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citation

6

omitted).

### 1. Title VII and § 1981 Race Discrimination Claims

Ms. Thomas contends that Fairmount unlawfully discharged her based on her race in violation of Title VII and § 1981. "In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim." Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999) (citation omitted). Thus, the Court's analysis of Ms. Thomas's Title VII race discrimination claim applies with equal force to her § 1981 claim.

#### A. *Prima Facie* Case

Because there is insufficient evidence in the record to demonstrate that similarly situated non-African-American employees received preferential treatment, or that the circumstances of Ms. Thomas's discharge raise an inference of discrimination on the basis of race, Ms. Thomas cannot make out a *prima facie* case.

To establish a *prima facie* case of discrimination on the basis of race under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) similarly situated persons outside of her protected class were treated more favorably, or the circumstances of the adverse employment action give rise to an inference of discrimination. See Jones v. School Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999). The Third Circuit recently stated that "there is a low bar for establishing a *prima facie* case of employment discrimination." Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir 2006) (citations omitted).

Here, the dispute is centered on the fourth element of the *prima facie* case, that is, whether similarly situated non-African-American employees were treated more favorably, or whether the circumstances of Ms. Thomas's discharge give rise to an inference of discrimination.[3]  Even when examined under the "low bar" standard articulated by the Court of Appeals, there is no evidence in the record that Fairmount treated similarly situated non-African-American employees more favorably.

To demonstrate preferential treatment, Ms. Thomas points to six individuals whom she believes Fairmount treated more favorably on the basis of their race.  When questioned about each of these persons, however, Ms. Thomas either did not recognize the name, confused the individual with another employee, or relied on admitted "gossip" or "rumor and innuendo" to substantiate her contentions.  Given that 88% of Fairmount's psych techs are African-American, and that the record lacks evidence of any instance of a non-African-American employee receiving preferential treatment, Ms. Thomas cannot satisfy the fourth element of her *prima facie* case on this basis.

Likewise, Ms. Thomas has failed to demonstrate that the circumstances of her discharge lead to an inference of discrimination.  Ms. Thomas contends that Ms. Hofmann deliberately shifted the blame for the unmonitored patients away from Ms. Roth, the shift's charge nurse, and pinned it on her.  Ms. Thomas's allegation implies that Ms. Hofmann's decision not to discipline a Caucasian supervisor and instead discharge an African American employee is indicative of

---

[3] Ms. Thomas has satisfied the first three elements of the *prima facie* case.  Ms. Thomas is African-American, which places her in a protected class, and Ms. Thomas apparently was qualified for the position of psych tech by virtue of Fairmount hiring her to fill that position. Lastly, Ms. Thomas suffered an "adverse employment action" when Fairmount discharged her in March 2004.

discriminatory animus. However, Ms. Thomas concedes that Ms. Hofmann did not discriminate against Ms. Thomas on the basis of race. (See Def. Mot. Ex. B, Thomas Dep. 111-12.) In addition, Ms. Thomas does not allege that Ms. Mahoney, also an African-American woman, discriminated against Ms. Thomas on the basis of race when Ms. Mahoney investigated Ms. Thomas's administrative complaint.

Because Ms. Thomas cannot make out a *prima facie* case of discrimination based on race, the Court will grant summary judgment in favor of Fairmount on the race discrimination claim. Indeed, even if the Court were to conclude that Ms. Thomas satisfied this first prong of the McDonnell Douglas inquiry, summary judgment for Fairmount is nonetheless appropriate because the evidence in the record is insufficient to demonstrate that Fairmount's legitimate, nondiscriminatory reason for Ms. Thomas's discharge is pretextual.

### B. Fairmount's Legitimate, Nondiscriminatory Reason for Ms. Thomas's Discharge

Assuming, *arguendo*, that Ms. Thomas established a *prima facie* case, the burden shifts to Fairmount to proffer a legitimate, non-discriminatory reason for discharging Ms. Thomas. See Fuentes, 32 F.3d at 763. Here, Fairmount has satisfied its burden of production.

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination. Burdine, 450 U.S. at 254. The defendant's burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). Thus, the defendant can satisfy its burden by presenting evidence sufficient to conclude that there was a nondiscriminatory reason for the plaintiff's

discharge. Fuentes, 32 F.3d at 763 (citing Hicks, 509 U.S. at 508). Our Court of Appeals has described this burden as "relatively light," as the defendant need not prove that its tendered reason actually motivated its decision. Fuentes, 32 F.3d at 763 (citing Burdine, 450 U.S. at 253).

Fairmount asserts that Ms. Thomas committed a serious infraction by failing to monitor 10 patients for two hours during her March 22-23, 2004 shift, which justifies her discharge. In addition, adds Fairmount, Ms. Thomas's two formal disciplinary actions, the first of which alone provided sufficient grounds for discharge, and Ms. Thomas's poor performance evaluation supported Fairmount's decision to discharge her.

Fairmount has met its burden of production. Ms. Thomas's alleged failure to monitor 10 psychiatric patients, particularly when viewed in light of her prior disciplinary issues and poor performance evaluation, is a legitimate and nondiscriminatory reason for her discharge. See Healy v. New York Life Ins. Co., 860 F.2d 1209, 1214 (3d Cir. 1988) (recognizing poor performance as a legitimate business reason for termination).

   **C.**  **Evidence of Pretext**

If the defendant meets its burden of production, the burden shifts back to the plaintiff, who can defeat summary judgment only by introducing evidence that would allow a reasonable factfinder to (1) disbelieve the defendant's proffered reason, or (2) believe that a discriminatory reason more likely than not was a motivating or determinative cause of the defendant's action. Fuentes, 32 F.3d at 764 (citations omitted). The plaintiff cannot discredit the defendant's reason simply by showing that it was wrong or mistaken because the pertinent factual dispute is whether "discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765. Instead, the plaintiff "must demonstrate such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's reason that a reasonable factfinder rationally could find them unworthy of credence and thereby indicative of discrimination. Id. (citations omitted).

There is insufficient evidence in the record for a reasonable jury to conclude that Fairmount's legitimate, nondiscriminatory reason for Ms. Thomas's discharge is pretext. At the core of her argument that Fairmount's proffered reason is pretextual is Ms. Thomas's contention that the rounds sheet, the document she signed for the unmonitored patients, bears no correlation to the Q-15s, the document she allegedly failed to sign. According to Ms. Thomas, the psych tech who signs the rounds sheet during any given shift is not necessarily the same psych tech who completes or, as here, fails to complete, the Q-15s. For example, Mr. Bey completed some Q-15s between 12:45 a.m. and 1:30 a.m. during the March 22-23 shift, but Ms. Claitt signed the rounds sheet for that period, and Ms. Claitt completed some Q-15s between 2:15 a.m. and 3:30 a.m., but Ms. Thomas signed the rounds sheet for that period.[4] Due to this reality, argues Ms. Thomas, the rounds sheet alone, although bearing Ms. Thomas's signature, is insufficient to prove that she was assigned to the unmonitored patients. In addition, Ms. Thomas asserts that she never possessed the clipboard holding the Q-15s for the unmonitored patients at any point during the March 22-23 shift, and thus she could not have been responsible for completing the documents on that clipboard.

Ms. Thomas contends that a diligent investigation would have revealed that Mr. Bey was

---

[4] Ms. Thomas argues that the discrepancy between the rounds sheet and Q-15s results from "splitting the unit," a practice by which two psych techs each take half of the level 3 patients, who require evaluations every 15 minutes, and complete their Q-15s. (Def. Mot. Ex. F, Roth Dep. 52:1-53:10.)

the psych tech at fault. To show that Fairmount did not adequately investigate the incident, Ms. Thomas points to the facts that both Ms. Hofmann and Ms. Mahoney, in the absence of the March 22-23 assignment sheet, relied solely on the rounds sheet, notwithstanding their understanding that the rounds sheet might not correlate with the Q-15s. Ms. Thomas also contends that Ms. Mahoney made representations about Fairmount's alleged equal opportunity policies without knowledge of Fairmount's employment history. Lastly, Ms. Thomas emphasizes that Ms. Mahoney's testimony about conversations with Ms. Roth during the course of Ms. Mahoney's investigation is contradicted by Ms. Roth's testimony denying any communication with Ms. Mahoney.

Even viewed in the light most favorable to Ms. Thomas, as required in the context of this Motion, there is insufficient evidence in the record for a reasonable jury to conclude that Fairmount's proffered reason for Ms. Thomas's discharge is pretext. All three of the psych techs on duty during the March 22-23 shift were African-American, and it is undisputed that one of them was assigned to the unmonitored patients. Consequently, regardless of which psych tech Mmes. Hofmann, Roth and Mahoney concluded was responsible for the unmonitored patients, Fairmount ultimately would have taken an adverse action against one of its African-American employees. Thus, there is no logical basis for sustaining an allegation that Fairmount discriminated against Ms. Thomas on the basis of race. Accordingly, the Court will grant summary judgment in favor of Fairmount on the race discrimination claims.

### 2. Title VII Gender Discrimination Claim

Ms. Thomas also alleges that Fairmount discriminated against her based on her gender in violation of Title VII. Courts evaluate claims of gender discrimination under the McDonnell

Douglas burden-shifting framework delineated above. Colussi v. Woodruff Family Services, 173 Fed. App'x 118, 121 (3d. Cir 2006). Because the evidence in the record fails to show that Fairmount's proffered reason for Ms. Thomas's discharge is pretext, the Court will grant summary judgment in favor of Fairmount on the gender discrimination claim.

### A.     *Prima Facie* Case

Neither party disputes that Ms. Thomas can establish a *prima facie* case of gender discrimination, which requires her to show that (1) she was a member of a protected class, (2) she was qualified for the position she held, and (3) another employee, not within the protected class, received more favorable treatment. Scheidemantle, 470 F.3d at 539. Here, Ms. Thomas succeeds in making out a *prima facie* case because she is a woman, was qualified for the position of psych tech, and was discharged even though Mr. Bey, a male psych tech, allegedly was responsible for the infraction that prompted Ms. Thomas's discharge.

### B.     Fairmount's Legitimate, Nondiscriminatory Reason for Ms. Thomas's Discharge

Fairmount's proffered legitimate, nondiscriminatory reason for Ms. Thomas's discharge is the same as that discussed above: Ms. Thomas's failure to observe 10 mentally unstable patients in violation of hospital regulations, as well as Ms. Thomas's prior disciplinary infractions and poor performance evaluation. As previously discussed, this rationale is sufficient to satisfy Fairmount's burden of production. See St. Mary's Honor Ctr., 509 U.S. at 508 (holding that the employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision); Healy, 860 F.2d at 1214 (recognizing poor performance as a

legitimate business reason for termination).

### C.   Evidence of Pretext

The evidence in the record is insufficient for a reasonable jury to conclude that Fairmount's proffered reason for Ms. Thomas's discharge is pretext. The standard for assessing this prong of the McDonnell Douglas inquiry is not whether the employer was "wrong or mistaken," but rather whether the employer was motivated by "discriminatory animus." The decisionmaker's membership in the plaintiff's protected class weakens any inference of discrimination. See Ziegler v. Delaware Cty. Daily Times, 128 F. Supp. 2d 790, 812 n.47 (E.D. Pa. 2001) (citation omitted).

Here, the evidence in the record fails to demonstrate any discriminatory animus on the part of Fairmount. In the first instance, the evidence in the record does not support a conclusion that Fairmount's male employees were treated any differently than its female employees. The lone evidence supporting Ms. Thomas's claim is the decision to blame her for the unmonitored patients, instead of blaming (and discharging) her male colleague, Mr. Bey, who, according to Ms. Thomas, was at fault. Such a bare allegation does not suffice to raise an inference of pretext. Moreover, the fact that three *female* Fairmount employees, namely Mmes. Hofmann, Roth and Mahoney, concluded that Ms. Thomas was at fault and made the decision to discharge her weakens any inference of gender discrimination. There is, of course, no evidence in this record of even one instance in which a male employee exerted authority over Ms. Thomas: Ms. Thomas was interviewed, hired, supervised and discharged by women.

Ms. Thomas relies heavily on Colussi, where the Court of Appeals for the Third Circuit reversed the district court's grant of summary judgment in a gender discrimination action. In

Colussi, the partners of a funeral home, all of whom were male, discharged the only two female funeral directors as part of a reduction in workforce. 173 Fed. App'x at 119-120. The partners maintained that they dismissed the two female directors based on lack of seniority and poor performance, respectively. Id. at 119. Examining the record in the light most favorable to the plaintiffs, however, the Court of Appeals determined that a male funeral director, rather than one of the female plaintiffs, possessed the least seniority. Id. at 121-122. Thus, with respect to that plaintiff, the court held that the record could support a finding of pretext. "The partners' refusal to countenance even the possibility of a mistake, or to give any explanation of their apparent miscalculation of [the plaintiff's] start date, could support an inference that their proffered justification for her termination is merely a post hoc rationalization." Id.

In contrast, the Court of Appeals affirmed the district court's grant of summary judgment with respect to the other plaintiff because the evidence in the record supported the partners' assertion that she was one of the "worst performers" at the company. Id. at 122-23. In addition, there was insufficient evidence in the record to show that gender discrimination was a "motivating factor" in the decision to terminate her because, unlike the other plaintiff, she was not exposed to gender-based comments. Id. at 123.

The present case is distinct from the circumstances of the Colussi plaintiff ostensibly discharged based on seniority, but similar to the circumstances of the Colussi plaintiff discharged for poor performance. Here, Ms. Thomas has a documented history of two disciplinary infractions and a poor performance evaluation, and there is no evidence in the record – or any allegation – of any discriminatory treatment other than Ms. Thomas's discharge. In Colussi, the circumstances of the plaintiffs' discharge, i.e., only females were discharged while their male

15

counterparts were retained, alone were insufficient to warrant reversal of the grant of summary judgment. Rather, the *additional* evidence of discriminatory animus with respect to one of the plaintiffs, such as gender-based comments and lack of effort to correctly calculate seniority, motivated the appellate reversal.

Ms. Thomas maintains that the partners' "mistake" with respect to seniority in Colussi is similar to Fairmount's "mistake" with respect to the unmonitored patients here, which thus raises a similar inference of discriminatory animus. Here, however, Fairmount took adequate steps to the investigate the lapse in care, and made an apparent good-faith effort to correctly determine the identity of the responsible employee. Therefore, even though Fairmount arguably may not have been correct in its assessment that Ms. Thomas was responsible for the unmonitored patients, such a mistake alone, in the absence of any evidence of discriminatory animus, does not violate Title VII. See Fuentes, 32 F.3d at 765 (holding that a plaintiff cannot satisfy his burden merely by relying on a showing that "the employer's decision was wrong or mistaken," because the focus is on "whether discriminatory animus motived the employer, not whether the employer is wise, shrewd, prudent or competent"). In Colussi, the Court of Appeals was careful to distinguish the partners' "mistake," from the simple mistakes based on "good-faith misunderstandings" to which Fuentes refers. See Colussi, 173 Fed. App'x at 122 n.2. Under the circumstances presented to the Court here, Fairmount's alleged "mistake" in assigning responsibility is insufficient, without more, to raise an inference of pretext.

**CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in favor of Fairmount

on all claims.  An Order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINA THOMAS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **FAIRMOUNT BEHAVIORAL** | : | |
| **HEALTH SYSTEM,** | : | |
| Defendant | : | **NO. 06-523** |

## ORDER

AND NOW, this 8th day of August, 2007, upon consideration of the Defendant's Motion for Summary Judgment (Docket No. 11) and the Plaintiff's response thereto (Docket No. 13), it is hereby ORDERED that the Motion is GRANTED.

The Clerk of the Court is instructed enter judgment in favor of Defendant Fairmount Behavioral Health System a/k/a UHS of Fairmount, Inc. and to close this case for all purposes.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge